**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MACON-BIBB COUNTY<br>ECONOMIC OPPORTUNITY COUNCIL, INC.,<br>653 Second Street, Suite 200<br>Macon, Georgia 31201<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES,<br>200 Independence Avenue, S.W.<br>Washington, DC 20201,<br><br>    and<br><br>SYLVIA MATHEWS BURWELL, Secretary<br>U.S. Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, DC 20201<br><br>    Defendants. | Case No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Macon-Bibb County Economic Opportunity Council, Inc. ("Macon-Bibb") files this complaint against defendants United States Department of Health and Human Services and Sylvia Mathews Burwell, in her official capacity as Secretary, United States Department of Health and Human Services (collectively "HHS," "ACF"[1] or "Defendants") pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"). Plaintiff seeks a declaration that HHS acted arbitrarily, capriciously and contrary to law when it conducted an unfair competition

---

[1] The Secretary has delegated authority for Head Start/Early Head Start to an operating division within HHS, the Administration for Children and Families ("ACF").

1

for a Head Start grant award in Macon-Bibb and Monroe Counties, Georgia. Plaintiff further seeks an injunction preventing HHS from awarding a Head Start grant pursuant to that unfair competition.

## INTRODUCTION

1. This dispute concerns Defendants' actions in conducting an unlawful competition for a Head Start grant award in Macon-Bibb and Monroe Counties, Georgia.

2. Defendants ignored, and continue to ignore, their obligations: (a) to hold an open competition before entering into sole negotiations with Tender Years Learning Corporation ("TYLC") in preparation to award a Head Start grant (*see* 42 U.S.C. § 9836(d)) to TYLC and (b) to treat all applicants fairly and equitably (*see* 42 C.F.R. §§ 1307.1 and 1307.3).

3. As a result, Plaintiff has been deprived of its right to compete in an open and fair competition for the award of a Head Start grant.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Macon-Bibb's claims pursuant to 28 U.S.C. § 1331. The declaratory and injunctive relief sought in this action is authorized under 28 U.S.C. §§ 2201 and 2202. Judicial review of Defendants' actions is authorized under 5 U.S.C. §§ 701-706.

5. Venue is proper in this district under 28 U.S.C. § 1391(e).

## PARTIES

6. Plaintiff Macon-Bibb is a not-for-profit corporation established under the laws of the State of Georgia. Plaintiff's mission is to break the cycle of poverty by coordinating available resources, in a structured manner, to affect the economic and other causes of poverty in the Macon-Bibb County area. Plaintiff is also a community action agency, a type of community-

based organized that emerged from the Johnson Administration's War on Poverty. See 42 U.S.C. § 9910(a).

7. Defendant United States Department of Health and Human Services is an agency of the United States government within the meaning of 5 U.S.C. § 701(b)(1). Under 42 U.S.C. §§ 9831-9852 (the "Head Start Act"), the Secretary of HHS is the executive branch official responsible for the administration of the federal Head Start and Early Head Start programs.

8. Defendant Sylvia Mathews Burwell is the Secretary of the United States Department of Health and Human Services and is therefore the official within the executive branch of the United States government ultimately responsible for carrying out the programs and activities of that department according to the mandates of federal law.

## LEGAL FRAMEWORK

*Statutory Authorization and Funding Structure*

9. The Head Start program came into existence soon after the enactment of the Economic Opportunity Act of 1964. It delivers comprehensive, high quality services to either low-income or categorically eligible families and is designed to foster the healthy development of young children between the ages of three and the age of compulsory school attendance. The Head Start program provides a wide range of individualized services, including education and early childhood development; medical, dental and mental health; and nutrition.

10. The Head Start program was subsequently expanded to include services to eligible families with children from birth to age three, as well as pregnant women. This expansion is known as Early Head Start.

11. The Head Start Act provides that HHS will implement the Head Start program through awards of federal financial assistance to local public, private nonprofit and for-profit

organizations within a community. 42 U.S.C. § 9836(a)(1). An organization must demonstrate, among other things, its capacity to (1) provide needed services to children, (2) provide appropriate services to children with special physical and/or educational needs, (3) meet the needs of children and families whose primary language is other than English, (4) involve parents in a meaningful fashion in the planning, design, and implementation of Head Start activities, and (5) coordinate with local child care providers and educational institutions to ensure that participating children are prepared to enter elementary school by the age of compulsory school attendance. 42 U.S.C. § 9836(d)(2).

*Head Start Monitoring, Enforcement and Quality Assurance*

12. Once organizations are designated as Head Start agencies, they are subject to monitoring by ACF through periodic on-site reviews for the purpose of "determin[ing] whether Head Start agencies meet standards … established under this subchapter with respect to program, administrative, financial management, and other requirements, and in order to help the programs identify areas for improvement and areas of strength as part of their ongoing self-assessment process." 42 U.S.C. § 9836(c)(1).

13. If ACF documents deficiencies in a Head Start program, a grantee must initiate corrective actions in order to continue receiving Head Start financial assistance. *See* 45 C.F.R. §§ 1304.60, 1304.61. The range and materiality of potential deficiencies can vary significantly and some can be rather inconsequential.

14. ACF demands that grantees immediately cure deficiencies that either (1) involve a risk to the health or safety of program participants or staff, or (2) "pose[] a threat to the integrity of Federal funds." 42 U.S.C. § 9836(e)(1)(B)(i). As to all other deficiencies, ACF may require correction either within 90 days of grantee notification (if ACF deems such a time frame to be

reasonable) or by the deadline set in an approved "quality improvement plan" (which can be no later than one year after grantee notification).  42 U.S.C. § 9836(e)(1)(B)(ii)-(iii).

15. A grantee's failure timely to correct a deficiency will result in termination of its designation as a Head Start agency and loss of federal financial assistance under the Head Start Act.  42 U.S.C. § 9836(e)(1)(c); 45 C.F.R. § 1304.60(f).

16. Although HHS regulations provide a mechanism for administrative review of enforcement actions arising out of a grantee's failure timely to correct one or more deficiencies no such administrative appeal is available for deficiency determinations in and of themselves.  It is only where a deficiency has gone uncorrected and ACF has taken steps to terminate a grantee's Head Start financial assistance that the grantee might be able to challenge an ACF deficiency finding.

*2007 Head Start Reauthorization/Amendments*

17. On December 12, 2007 Congress reauthorized the Head Start Act in the Improving Head Start for School Readiness Act of 2007, Pub. L. No. 110-134, 121 Stat. 1363 (2007) (the "2007 Reauthorization").

18. Prior to ACF's implementation of certain provisions of the 2007 Reauthorization, grants awarded to entities designated as Head Start agencies were for an "indefinite" project period; *i.e.*, HHS automatically renewed a grantee's funding from year to year so long as the grantee met Head Start programmatic and regulatory requirements.

19. As amended, the Head Start Act now mandates five-year grant periods, which can be renewed on a competitive or non-competitive basis depending on various factors as specified in the Designation Renewal System ("DRS") regulations.  42 U.S.C. § 9836(c).

20. Under the DRS regulations, if an agency has "one or more deficiencies on a single review" that was conducted within a defined time period, the grant must be renewed on a competitive basis. 45 C.F.R. § 1307.3.

21. If an agency is determined to have a deficiency that triggers competitive renewal, ACF notifies the agency that it "will be required to compete for funding for an additional five-year period." 45 C.F.R. § 1307.7.

22. Any competition required by the Head Start Act must be an "open competition." 42 U.S.C. § 9836(d).

23. The competition must also be fair and equitable: "It is intended that … applicants to administer programs receive fair and equitable consideration." 42 C.F.R. § 1307.1. Furthermore, "the legal rights of current Head Start and Early Head Start grantees be fully protected." *Id*.

## FACTUAL BACKGROUND

24. Macon-Bibb has been a Head Start agency responsible for delivering high-quality Head Start and Early Head Start services to the Macon-Bibb community since 1968.

25. From 1968 through June 2013, ACF did not document any deficiencies with Macon-Bibb's Head Start program.

26. During a review of Macon-Bibb's Head Start program in June 2013, ACF documented three minor deficiencies.

27. Because of the minor deficiencies noted in the June 2013 review, Macon-Bibb was required to compete for renewal of its Head Start grant.

28. On February 3, 2014, ACF sent a letter to Macon-Bibb explaining that should Macon-Bibb wish to continue receiving Head Start funds, Macon-Bibb would need to submit an application in response to a funding announcement opportunity that would be published in 2014.

*ACF solicits applications.*

29. In the fall of 2014, ACF posted a funding opportunity announcement for the Macon-Bibb and Monroe Counties service area.

30. Macon-Bibb submitted a timely application in response to the solicitation.

31. After Macon-Bibb submitted its application, ACF determined that the solicitation was flawed and cancelled it.

32. On or around December 2014, ACF posted a revised funding opportunity announcement for a Head Start and/or Early Head Start Grantee in Macon-Bibb and Monroe Counties, Georgia (the "FOA").  A true and correct copy of the FOA is attached as ***Exhibit 1***.

33. The FOA listed an anticipated project start date of July 1, 2015. *Id.* at 8.

34. The FOA provided that "[a]pplicants must demonstrate they meet the statutory requirement for designation as a Head Start and/or Early Head Start agency as defined in the Head Start Act." *Id.* at 10.

35. Macon-Bibb submitted a timely application in response to the FOA.

36. Tender Years Learning Corporation, Inc. ("TYLC"), a multi-state, for-profit corporation with at least one delinquent federal debt, also submitted an application in response to the FOA.

*ACF determines that TYLC was ineligible and cannot perform the grant requirements.*

37. On or about April of 2015, ACF began negotiations with TYLC regarding TYLC's application in response to the FOA.  ACF determined during the course of these

negotiations that TYLC lacked the organizational capacity to begin providing Head Start services within the timeframe required by the FOA.  During these negotiations, ACF learned that TYLC lacked the capacity to employ staff with the requisite early childhood experience and that TYLC's plan was to recruit existing Macon-Bibb staff.  *See* Funding Decision Memorandum, a true, correct and redacted copy of which is attached, without enclosures, as ***Exhibit 2***.

38. ACF also determined that TYLC lacked a statutorily required board and governing body.  *See* Declaration of Shawna Pinckney at ¶6, TYLC v. United States, No. 15-719C (Fed.Cl. July 16, 2015), a true and correct copy of which is attached as ***Exhibit 3***.

39. ACF also determined that TYLC "had made no progress on securing facilities or qualified staff to take over operations" and that "TYLC would be unable to accomplish these tasks before expiration of [Macon-Bibb's] existing grant."  *Id.*

40. Accordingly, ACF determined that "it was not prudent to make a grant to TYLC." *Id.* at ¶7.

41. ACF's official Funding Decision Memorandum concluded that, "In summary, the Office of Head Start has assessed **the risk of awarding Tender Years Learning, Inc. is too significant** based on the aforementioned factors."  ***Ex. 2*** at ¶4 (emphasis added).

*ACF determines that Macon-Bibb is qualified to provide Head Start services.*

42. ACF further determined that Macon-Bibb was "currently providing services without deficiencies" and was "otherwise qualified to provide Head Start and Early Head Start services." ***Ex.3*** at ¶ 7.

43. Accordingly, ACF elected to designate Macon-Bibb as an "interim provider" pursuant to 42 U.S.C. §9836(f)  *Id.*

44. ACF has explained that this "designation had the effect of continuing the indefinite project-period grant funding to [Macon-Bibb] at its existing level." *Ex.3* at ¶7.

45. On June 24, 2015, Shawna Pinckney, Director of the Grants and Contracts Division of the Office of Head Start, contacted Macon-Bibb to inquire whether Macon-Bibb could continue to perform as an interim grantee, *via* an extension of its existing award, through April 2016. Macon-Bibb agreed to do so.

46. In a July 7, 2015 letter, ACF informed Macon-Bibb that ACF "will be reissuing a funding opportunity announcement for this [Macon-Bibb and Monroe Counties] service area in the near future. This will afford your agency another opportunity to submit a proposal." A true and correct copy of the July 7, 2015 letter, without enclosures, is attached as *Exhibit 4*.

*TYLC files a lawsuit.*

47. On July 10, 2015, TYLC commenced litigation against the United States in the United States Court of Federal Claims (the "TYLC Litigation"). TYLC's lawsuit purported to be a "bid protest" of ACF's failure to award a Head Start grant to TYLC.

48. The United States moved to dismiss the TYLC litigation on the grounds that the United States Court of Federal Claims lacked jurisdiction over TYLC's claims.

49. In a separate filing, ACF's attorneys informed the court that ACF "will re-post the FOA this year in order to designate a grantee for a five year term. TYLC, Macon-Bibb EOC, and any other eligible entities are welcome to apply." *See* Defendants' Response in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction at 10 (citation omitted), TYLC v. United States, No.15-719C (Fed.Cl. July 16, 2015), a true, correct and redacted copy of which is attached, without exhibits, as *Exhibit 5*.

*ACF reverses course.*

50. On September 15, 2015, the United States filed a "notice of corrective action" in the TYLC Litigation stating that ACF "intends to take corrective action in this case by reopening the [FOA] and restarting negotiations with [TYLC]." Defendant's Notice of Corrective Action and Motion to Amend Scheduling Order at 1, TYLC v. United States, No. 15-719C (Fed.Cl. September 15, 2015), a true, correct and redacted copy of which is attached as *Exhibit 6.*

51. The notice of corrective action was supported by a declaration of Blanca Enriquez, Director of the Office of Head Start, who testified that "In response to the [TYLC] bid protest, HHS has decided to take corrective action." *Id.*

52. In a telephone conversation on September 16, 2015, Ms. Ann Linehan, acting director of the Office of Head Start, told a representative of Macon-Bibb that ACF was recommencing negotiations with TYLC.

53. In a telephone conversation on September 29, 2015, a representative of Macon-Bibb asked Ms. Linehan whether the funding opportunity announcement would be reissued, as initially promised. Ms. Linehan first replied "no," then corrected herself to state that she was not certain.

54. On or around October 20, 2015, TYLC posted job advertisements for various Head Start and Early Head Start positions, including Assistant Cook, Teacher, Assistant Teacher, Family Advocate, Maintenance Technician, Cook and Bus Driver. A true and correct copy of the solicitation is attached as *Exhibit 7*.

55. That same day, Keno Simmons, an ACF representative, contacted Ms. Sarita Hill, executive director for Macon-Bibb, to inquire about the number of children receiving Head Start

services through Macon-Bibb's program.  Mr. Simmons stated that his inquiry was related to a plan to transition children to a TYLC Head Start program.

56. Also on October 20, 2015, undersigned counsel sent a letter to Blanca Enriquez, Director of the Office of Head Start, demanding that ACF cease exclusive negotiations with TYLC and repost the FOA to allow for fair and open competition.  A true and correct copy of the October 20. 2015 letter, without enclosures, is attached as *Exhibit 8*.

57. As of the date of this filing, ACF has not responded to the October 20, 2015 letter.

58. On October 28, 2015, Macon-Bibb's Executive Director learned that the HHS Legislative Affairs office advised a staff member of Congressman Sanford Bishop (D-Ga) that HHS was taking "corrective action" as a result of the TYLC Litigation.  The staff member shared an e-mail with Macon-Bibb's Executive Director on that date summarizing that HHS intended to have the lawsuit dismissed and reopen negotiations with TYLC.  According to the staff member's email, "If Tender Years is found to meet HHS' requirements for the awarding of the Head Start grant, HHS will move 'quickly and thoroughly' to avoid any disruption to the children.  It could mean that Tender Years could start serving the children prior to April 30, 2016.  Macon-Bibb, however, would not be a contender . . ."  A true and correct copy of the email from a staff member of Congressman Stanford Bishop's office is attached as *Exhibit 9*.

## CAUSES OF ACTION

### COUNT I
### ADMINISTRATIVE PROCEDURE ACT:
### (Failure to Conduct an Open Competition/Exclusive Negotiations with TYLC)

59. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 58 above.

60. ACF is required to conduct an "open competition" before awarding a Head Start grant. 42 U.S.C. § 9836(d).

61. ACF is obligated to ensure that "applicants to administer programs receive fair and equitable consideration; and that the legal rights of current Head Start and Early Head Start grantees be fully protected." 42 C.F.R. § 1307.1.

62. ACF made a determination that TYLC was lacked the capacity to provide the services set forth in the FOA in several material respects including TYLC's lack of organizational capacity and required staffing.

63. ACF also concluded that the risk of making an award to TYLC was "too significant."

64. ACF failed to hold an open and fair competition by, among other things, engaging in exclusive negotiations with TYLC , despite the negative determinations it had made concerning TYLC's lack of capacity and overall risk.

65. ACF's failure to hold an open and fair competition is arbitrary and capricious and a violation of law.

66. As both an entity that submitted a proposal in response to the FOA and as the statutory "interim provider," Macon-Bibb has been injured by ACF's failure to hold an open and fair competition.

## COUNT II
## ADMINISTRATIVE PROCEDURE ACT:
### (Failure to Conduct an Open Competition/Failure to Re-issue the FOA)

67. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 66 above.

68. ACF is required to conduct an "open competition" before awarding a Head Start grant. 42 U.S.C. § 9836(d).

69. ACF is obligated to ensure that "applicants to administer programs receive fair and equitable consideration; and that the legal rights of current Head Start and Early Head Start grantees be fully protected." 42 C.F.R. § 1307.1.

70. ACF determined that the FOA would be reposted to allow applicants to resubmit grant applications.

71. Despite this determination, ACF has decided to proceed with "negotiations" exclusively with TYLC based on the closed FOA and after finding that TYLC was ineligible, lacked the requisite capacity and posed a risk.

72. ACF's refusal to repost the FOA violates its obligation to hold an "open competition" prior to making a Head Start award.

73. ACF's refusal to repost the FOA violates its obligation to treat all applicants fairly.

74. ACF's refusal to repost the FOA is arbitrary and capricious.

75. As both an entity that submitted a proposal in response to the FOA and as the statutory "interim provider," Macon-Bibb has been injured by ACF's refusal to repost the FOA to allow for open and fair competition.

## COUNT III
## ADMINISTRATIVE PROCEDURE ACT:
### (Failure to Conduct an Open Competition/ Defective Corrective Action)

76. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 75 above.

77. ACF is required to conduct an "open competition" before awarding a Head Start grant.  42 U.S.C. § 9836(d).

78. ACF is obligated to ensure that "applicants to administer programs receive fair and equitable consideration; and that the legal rights of current Head Start and Early Head Start grantees be fully protected."  42 C.F.R. § 1307.1.

79. ACF has decided to engage in "corrective action" by exclusively negotiating with TYLC.

80. Upon information and belief, TYLC's exclusive negotiations with ACF afforded TYLC the opportunity to present information that was not in TYLC's original application for funding and/or take actions to obtain organizational capacity that ACF specifically found that TYLC previously lacked.

81. Other entities that submitted proposal were not afforded an opportunity to supplement their proposals.

82. ACF's negotiations with TYLC violate its obligation to hold an "open competition" prior to making a Head Start award.

83. ACF's exclusive negotiations with TYLC violate its obligation to treat all applicants fairly.

84. ACF's negotiations with TYLC are arbitrary and capricious.

85. As both an entity that submitted a proposal in response to the FOA and as the statutory "interim provider," Macon-Bibb has been injured by ACF's exclusive negotiations with TYLC and associated "corrective action."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter an order:

1.	Declaring that Defendants violated the requirement, under the Head Start Act, to conduct an "open competition;"

2.	Declaring that Defendants violated their obligation to ensure that applicants to administer Head Start programs receive fair and equitable consideration, and that the legal rights of current Head Start and Early Head Start grantees be fully protected;

3.	Declaring that Defendants acted arbitrarily and capriciously;

4.	Enjoining Defendants from making an award of a Head Start grant based on the FOA;

5.	Directing Defendants to post a new funding opportunity announcement so as to allow open competition for Head Start/Early Head Start for the Macon-Bibb and Monroe County service areas; and

6.	Affording Plaintiff such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Date: October 30, 2015                /s/ Kathy S. Ghiladi
                                      Edward T. Waters (#422461)
                                      Kathy S. Ghiladi (#435484)
                                      FELDESMAN TUCKER LEIFER FIDELL LLP
                                      1129 20th Street, N.W., 4th Floor
                                      Washington, DC 20036
                                      (202) 466-8960 (telephone)
                                      (202) 293-8103 (facsimile)
                                      E-mail: ewaters@ftlf.com
                                              kghiladi@ftlf.com